**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Sean Murtaugh | : | |
| | : | |
| vs. | : | Civil Action No. 2:24-cv-00026-JFM |
| | : | |
| Robert S. Goggin, III, Esquire, Goggin & | : | |
| Duckworth, P.C., Forceno Goggin & Keller, P.C. | : | |
| Keller and Goggin, P.C., Jordan Litigation | : | |
| Funding, LLC, Norris Jordan | : | |

**BRIEF OF DEFENDANTS ROBERT S. GOGGIN, III, ESQUIRE, GOGGIN &
DUCKWORTH, P.C., FORCENO GOGGIN & KELLER, P.C., and KELLER &
GOGGIN, P.C.  IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## I.        Introduction

Defendants, Robert S. Goggin, III, Esquire, Goggin & Duckworth, P.C.,

Forceno Goggin & Keller, P.C., Keller & Goggin, P.C. ("moving defendants"), by

and through counsel, Marshall Dennehey, P.C., move this Court pursuant to

Federal Rule of Civil Procedure 12(b)(6) to dismiss plaintiff's complaint, with

prejudice, and Rule 12(f) to strike scandalous and impertinent material.  The

grounds for dismissal are set forth below.  The gravamen of plaintiff's complaint is

that he was unaware that litigation funding had been utilized to pay for some

litigation costs.  This is a fee dispute over interest on those litigation costs that

plaintiff alleges he was unaware of prior to settlement.  Plaintiff also asserts he

settled the underlying case for what he believes was less than its full value.  The

common phrase, "don't make a federal case out of it," is attributed to Jimmy

Durante, but is apropos here.

## II.    Factual Background and Procedural History

The present action arises out of moving defendants' representation of

plaintiff in an underlying action.  Plaintiff's complaint, attached hereto as Exhibit

"A."  As set forth in the complaint, plaintiff alleged he suffered from neurological

symptoms at work due to working too close to a cell phone tower in January 2018.

Exhibit "A" at ¶¶ 19-30.  Plaintiff, who worked for Amtrak as a lineman,

eventually left work in August 2019, due to "continued symptoms from tinnitus

and from headaches."  Exhibit "A" at ¶¶ 19, 30-31.  Plaintiff also alleged his

mental health was negatively effected due to his workplace issues.  Exhibit "A" at

¶ 32.

Plaintiff retained Mr. Goggin to represent him with respect to the workplace

injuries.  Exhibit "A" at ¶ 34.  A complaint was filed on behalf of plaintiff against

Amtrak in September 2018.  Exhibit "A" at ¶ 44.  Plaintiff verified the complaint

in the underlying matter.  Underlying complaint, attached hereto as Exhibit "B."

The underlying complaint asserts, *inter alia*, that plaintiff had incurred an

impairment which prevented him "from performing all or substantially all of the

material acts and duties which constitute their usual and customary daily

activities."  Exhibit "B" at ¶ 11.

In December 2019, a stipulation was filed to permit Amtrak to file a joinder complaint against T-Mobile Northeast LLC.  Docket in underlying action, attached hereto as Exhibit "C."  The Joinder Complaint was not filed until March 16, 2020.  Exhibit "C."  Discovery deadlines were extended multiple times at the request of the underlying defendants.  Exhibit "B."  The parties engaged in significant discovery disputes including multiple discovery motions filed by all parties.  Exhibit "C."  An unsuccessful motion for summary judgment was filed with respect to the joinder complaint.  Exhibit "C."

During the representation, Mr. Goggin obtained reports from nine experts to support plaintiff's contentions with respect to causation and his injuries and damages.  Exhibit "A" at ¶ 96.  Plaintiff was deposed.  Exhibit "A" at ¶ 83.  However, despite asserting a complete inability to work, plaintiff began working with PECO in November 2021.  Exhibit "A" at ¶ 88.

As the case approached a March 2023 trial date, settlement discussions occurred.  Exhibit "A" at ¶ 100-110.  Mr. Goggin was eventually able to obtain an offer of settlement of $475,000 for plaintiff's case.  Exhibit "A" at ¶ 110.  While not happy with the amount of the settlement, plaintiff agreed to accept the settlement rather than proceed to trial.  Exhibit "A" at ¶ 128.

Litigation funding was utilized to retain experts on plaintiff's behalf.  Exhibit "A" at ¶ 137.  Plaintiff alleges he was unaware of this funding prior to the

settlement.  Exhibit "A" at ¶ 137.  Plaintiff alleges that but for the litigation

funding, the costs of the experts would have been $81,246.47, rather than

$136,647.81.  Exhibit "A" at ¶¶ 145, 149.  After new counsel was obtained, the

settlement agreement was finalized.  Exhibit "A" at ¶ 188.  Plaintiff's complaint

asserts moving defendants worked with co-defendants to obtain the litigation

funding to retain the experts in plaintiff's case to enrich themselves to plaintiff's

detriment.  Exhibit "A" at ¶¶ 173-178, 191.

Plaintiff's complaint includes a number of paragraphs relating to a company

formerly owned by Mr. Goggin and litigation related to that company.  Exhibit "A"

at ¶¶ 196-200.  These paragraphs are unrelated to moving defendants'

representation of plaintiff and are impertinent and scandalous.

Plaintiff's complaint includes nine counts against moving defendants. The

first count purports to assert a claim under the RICO Act.  Exhibit "A" at ¶¶ 207-

332.  The allegations in the RICO claim are fairly general, but are based upon the

assertion that moving defendants entered into "unauthorized litigation funding

agreements from Mr. Murtaugh and passing the interest payment onto Mr.

Murtaugh."  Exhibit "A" at ¶ 212.  The second count of plaintiff's complaint

purports to state a claim for conspiracy to conduct the affairs of a racketeering

enterprise.  Exhibit "A" at ¶ 223- 226.  This count merely restates the allegations of

the first count of the complaint.

The third count of plaintiff's complaint purports to state a claim for securities fraud based on Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated by the SEC.  Exhibit "A" at ¶¶ 228-234.  This claim is based upon the allegation that defendants entered into "secret litigation funding agreements" using plaintiff's case as collateral and sought repayment.  Exhibit "A" at ¶ 230.

The fourth count of plaintiff's complaint purports to assert a claim of fraudulent inducement against moving defendants.  Exhibit "A" at ¶¶ 236-242.  Plaintiff asserts moving defendants "fraudulently induced" plaintiff to settle his claims.  Exhibit "A" at 240.  The complaint sets for a litany of alleged false statements and omissions, but generally alleges that moving defendants encouraged plaintiff to accept "a settlement far below a reasonable amount. . ."  Exhibit "A" at ¶ 242.

The fifth count of plaintiff's complaint purports to assert a claim for negligence against moving defendants.  Exhibit "A" at ¶¶ 244-249.  Plaintiff asserts he can maintain this claim "against Defendants, even though a settlement ultimately was reached in the underlying case, because Defendants misstated the effect of the settlement agreement, including that Defendants took out secret litigation funding agreements."  Exhibit "A" at ¶ 246.  Plaintiff asserts moving defendants were negligent by "[f]ailing to abide by the Pennsylvania Rules of

Professional Conduct, including Rules 1.2, 1.3, 1.4, 1.5, 1.7, 1.8, 1.16, 2.1, and 5.4." Exhibit "A" at ¶ 247(a). Other allegations of negligence include "failing to obtain a reasonable settlement," and a list of conduct related to alleged failures to communicate with plaintiff. Exhibit "A" at ¶ 247. Plaintiff also asserts negligence in "recommending Mr. Murtaugh settle his case for a small fraction of what it was potentially worth at trial." Exhibit "A" at ¶ 247(t). Plaintiff asserts this conduct "directly resulted in Plaintiffs accepting a settlement far below the case's value." Exhibit "A" at ¶ 248.

The sixth count of plaintiff's complaint purports to assert a claim for breach of fiduciary duty against moving defendants. Exhibit "A" at ¶¶ 251-254. The averments of this count are largely cut-and-pasted from the negligence count. Exhibit "A" at ¶ 253.

The seventh count of plaintiff's complaint purports to assert a claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law. Exhibit "A" at ¶ 257-259. This count asserts in the most general terms that defendants "engaged in fraudulent or deceptive conduct that created a likelihood of confusion or of misunderstanding about the litigation funding agreements." Exhibit "A" at ¶ 257. The basis for this is the alleged "secret litigation funding agreements." Exhibit "A" at ¶ 258.

The eighth count of plaintiff's complaint purports to assert a claim for civil conspiracy based upon the litigation funding agreements.  Exhibit "A" at ¶¶ 261-263.  The ninth count of plaintiff's complaint purports to seek declaratory judgment regarding Mr. Murtaugh's responsibility for paying pursuant to the litigation funding agreements.  Exhibit "A" at ¶¶ 265-271.

## III.    Legal Standard

### A.      12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).  To avoid dismissal and establish the grounds of entitlement to relief, a plaintiff must plead "enough factual matter" to "nudge claims across the line from conceivable to plausible." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)).  A plaintiff is obligated to establish the grounds of entitlement to relief with more than mere labels and conclusions. *Twombly*, 550 U.S. at 555 (quotations omitted).

Only a complaint that sets forth a claim which is plausible on its face will survive a motion to dismiss. *Id.* at 679.  Although a valid complaint requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), the "plaintiff must at a minimum state the operative

facts underlying the claim." *Herman v. Carbon County*, 248 Fed. Appx. 442, 444 (3d Cir. 2007) (citations omitted).  If the complaint and accompanying documents considered by the court fail to allege sufficient facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," then the claim is not facially plausible and it must be dismissed. *Iqbal*, 556 U.S. at 678.

Conclusory statements and "a formulaic recitation of the elements of a cause of action will not do," *Twombly*, 550 U.S. at 555, and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements [are] not suffic[ient]" to defeat a 12(b)(6) motion. *Iqbal*, 556 U.S. at 678.  Accordingly, a complaint fails to state a claim when accepting all well–pled factual allegations as true, the allegations to do not "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679).

The Third Circuit has offered a three-step process to be undertaken when deciding whether a claim has been sufficiently plead and should therefore survive a motion to dismiss. *Id.*  First, the court identifies the claim specific elements a plaintiff must plead in order to state a claim for relief. *Id.*  Second, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." *Id.*  Third, the court will look to the remaining well-pled facts and assuming those facts are true, "determine whether they

plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679) (internal quotations omitted).  The third step is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Iqbal*, 556 U.S. at 679) (internal quotations omitted).

### B.      12(f) Standard

Under Federal Rule of Civil Procedure 12(f), the court may strike "any redundant, immaterial, impertinent, or scandalous matter." *See* Fed. R. Civ. P. 12(f).  A decision to grant or deny a motion to strike a pleading, or any part of it, is vested in the trial court's discretion. *Zaloga v. Provident Life and Ace. Ins. Co. of America*, No. 3:09-cv-635, 2009 WL 4110320, at *8 (M.D. Pa. 2009).  A motion to strike pursuant to Rule 12(f) is appropriate where the allegations are so unrelated to plaintiff's claims as to be "unworthy of any consideration" and may cause prejudice to one of the parties. *See id.*  Motions to strike should be brought in the interest of justice, to save time and resources by making it unnecessary to litigate claims that will not affect the outcome of the case. *See North Penn Transfer, Inc. v. Victaulic Co. of Am.*, 859 F.Supp. 154, 158 (E.D. Pa. 1994) (citations omitted). Motions to strike are decided on the pleadings alone. *DeLa Cruz v. Piccari Press*, 521 F.Supp.2d 424, 429 (E.D. Pa. 2007).

## IV.    Argument

### A.    Plaintiff has not stated a claim under the RICO Act.

Counts I and II of plaintiff's complaint purport to state claims under the RICO Act against moving defendants.  To establish a Section 1962(c) violation, a plaintiff must allege (1) the existence of an enterprise affecting interstate commerce; (2) that the defendant was employed by or associated with the enterprise; (3) that the defendant participated, either directly or indirectly, in the conduct or the affairs of the enterprise; and (4) that he or she participated through a pattern of racketeering activity.  *United States v. Urban*, 404 F.3d 754, 769 (3d Cir. 2005).  Section 1962(d) provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this subsection." 18 U.S.C. § 1962(d).  Plaintiff cannot establish any of the elements of a claim under 18 U.S.C. § 1962(c) or (d).

### 1.    RICO enterprise and nexus

To begin with, plaintiff did not plead facts sufficient to establish the existence of a RICO enterprise or a nexus between the alleged enterprise and plaintiff's alleged injury.  A plaintiff must demonstrate that the enterprise is (1) an ongoing organization with some sort of structure for making and carrying out decisions; (2) that the members of the enterprise function as a continuing unit with established duties; and (3) that the enterprise is separate and apart from the pattern

of activity in which it engages.  *Brownell v. State Farm Mut. Ins. Co.*, 757 F.Supp. 526, 539 (E.D. Pa. 1991) (citations omitted).  The RICO enterprise and the RICO defendants must be distinct and separate.  *Id*.  The defendants must participate in the conduct of the affairs of the enterprise, as opposed to their own affairs.  *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163, 121 S.Ct. 2087, 150 L.Ed. 2d 198 (2001) (*citing Reves v. Ernst & Young*, 507 U.S. 170, 185, 113 S.Ct. 1163, 122 L.Ed. 2d 525 (1993)).

The nexus element requires proving a sufficiently close relationship between the defendants, and their involvement in the enterprise's affairs, and the pattern of racketeering.  *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 371 (3d Cir. 2010).  This includes the relationship between the defendants and the conduct of the enterprise's affairs and between those affairs and the predicate racketeering activity.  *See Ins. Brokerage*, 618 F.3d at 371; *see also United States v. Cauble*, 706 F.2d 1322, 1331–33 (5th Cir. 1983) (discussing the relational permutations of the defendant, enterprise, and racketeering acts in § 1962(c)'s nexus element).

To the extent lawyers or law firms simply act within the scope of their representation of a client, they are generally not considered to be part of the "operation or management" of a RICO enterprise.  *Kelly v. Palmer, Reifler, & Assoc., P.A.*, 681 F. Supp. 2d 1356, 1380 (S.D. Fla. 2010) ("Courts following [the Supreme Court's decision in] *Reves* have generally held that the provision of

traditional legal services does not constitute the 'operation or management' of an enterprise for purposes of RICO liability"); *see also Azrielli v. Cohen Law Offices*, 21 F.3d 512, 521-22 (2d Cir. 1994); *Nolte v. Pearson*, 994 F.3d 1311, 1316-17 (8th Cir. 1993); *Baumer v. Pachl*, 8 F.3d 1341, 1344 (9th Cir. 1993); *Marshall v. Fenstermacher*, No. 04-3477, 2007 WL 2892938, at *9 (E.D. Pa. Oct. 2, 2007) ("courts have often acknowledged ... that it is difficult for an attorney to be liable [under RICO] for performing ordinary legal tasks because such tasks often do not entail the 'operation or management' of an enterprise.'"); *Daugherty v. Adams*, No. CV 17-368, 2019 WL 7987859, at *21 (W.D. Pa. Nov. 15, 2019), *report and recommendation adopted sub nom. Daugherty v. Tiversa Holding Corp.*, No. CV 17-368, 2020 WL 467828 (W.D. Pa. 2020). (RICO claim dismissed because "Plaintiffs do not identify any purported actions taken by Pepper Hamilton outside of the scope of their legal representation of a client, or in furtherance of the alleged common purpose of the enterprise.").

In the present action, the only activities allegedly undertaken by moving defendants was obtaining litigation funding from co-defendants. Plaintiff's claim of an enterprise arising between his counsel and the co-defendant litigation funder is based upon his dissatisfaction with the settlement he agreed to and the interest on loans used to fund his litigation. This is insufficient to state a viable RICO Act claim. Plaintiff has not identified any action taken by moving defendants outside

of the scope of their representation of plaintiff.  There are no facts to support a

contention that moving defendants were conducting the affairs of an enterprise,

rather than their own affairs.  Plaintiff's complaint acknowledges that the litigation

funding was utilized to pay for experts in the underlying action.  Plaintiff has not

pled facts sufficient to establish the existence of a RICO enterprise or a nexus

between moving defendants and any alleged enterprise.  Counts I-II of plaintiff's

complaint should be dismissed with prejudice.

### 2.    No interstate activity

Even if plaintiff was able to establish the existence of an "enterprise" as

defined by the RICO Act, plaintiff has not alleged any activity by the enterprise

involving interstate commerce.  The requirement that the enterprise engage in

interstate or foreign activities is fundamental to a claim under the RICO Act.

*McKnight v. Sch. Dist. of Philadelphia*, 105 F. Supp. 2d 438, 445 (E.D. Pa. 2000)

("Plaintiff cannot prove any set of facts in support of his claim that will entitle him

to relief because all of the alleged operative facts occurred in Pennsylvania with no

interstate or foreign commerce involvement. Thus, the Plaintiff's RICO claim is

dismissed.").  Here the parties, the underlying litigation, and the underlying

funding agreements were all in Pennsylvania.  Plaintiff cannot prove any set of

facts in support of his claim that will entitle him to relief because all of the alleged

operative facts occurred in Pennsylvania with no interstate or foreign commerce

involvement and moving defendants motion to dismiss should be granted as to Counts I and II of the complaint.

### 3.    Pattern of Racketeering Activity

A "pattern" is defined as at least two acts of racketeering activity within a ten year period. 18 U.S.C. §§ 1961(5), 1962(c).  The statute sets forth a list of applicable predicate acts. 18 U.S.C. §§ 1961(1).  A plaintiff must aver that the predicate acts are related and that they amount to a threat of continued criminal activity.  *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 240, 109 S. Ct. 2893, 106 L.Ed. 2d 195 (1989) (pattern requires continuity plus relationship). "A short term scheme threatening no future criminal activity will not suffice." *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1412 (3d Cir. 1991).  In cases where the enterprise is no longer in existence, plaintiff must demonstrate "closed-ended" continuity: that the predicate acts occurred over such long period of time and were so repetitious and pervasive so as to threaten future criminal activity.  *3G Wireless, Inc. v. Metro PCS Pa. LLC*, No. 15-6319, 2016 U.S. Dist. LEXIS 24283, at *28 (E.D. Pa. 2016) ("Plaintiffs did not allege a specific threat of repetition extending into the future").

The activity alleged in the complaint regarding taking of litigation funding loans for the purposes of the underlying action has ended.  Plaintiff alleges: "The Enterprise's purpose was to enrich themselves through taking out unauthorized

litigation funding agreements from Mr. Murtaugh and passing the interest payment onto Mr. Murtaugh." Exhibit "A" at ¶ 212. Plaintiff alleged five loans taken to fund his litigation over a 15 month period. Exhibit "A" at ¶170. The litigation has ended and even if plaintiff were able to show the existence of requisite predicate acts, which he cannot, there is no possible threat of continued criminal activity.

There is also no racketeering activity. Plaintiff's allegations that defendants engaged in dealing in counterfeit obligations or securities and wire fraud are not supported by the fact that plaintiff alleges he was unaware of the litigation funding used to pursue his claims. Plaintiff has also not identified how any alleged acts relating to the litigation funding related to interstate commerce.

### 4.    Conspiracy

A defendant may be held liable under § 1962(d) for conspiracy without being liable under § 1962(c). However, in the event all substantive RICO claims in the action are dismissed, a plaintiff cannot bring a § 1962(d) claim for an injury flowing from a non-racketeering act. *See Beck v. Prupis,* 529 U.S. 494, 505, 120 S. Ct. 1608, 1616, 146 L. Ed. 2d 561 (2000). "Only allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain actions of the alleged conspirators taken to achieve that purpose, will be deemed sufficient ... .[A]n inference of conspiracy from the Complaint is no substitute for the requirement that the circumstances of

the conspiracy be pleaded with specificity." *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989) (citations omitted).  A plaintiff must allege facts to show that each defendant objectively manifested an agreement to participate, directly or indirectly, in the affairs of a RICO enterprise through the commission of two or more predicate acts. *Eaby v. Richmond*, 561 F.Supp. 131, 137 (M.D. Pa. 1983) (citations omitted).  Bare allegations of conspiracies described in general terms may be dismissed. *Id*.

Plaintiff's complaint is the quintessential expression of "bare allegations of conspiracy."  Plaintiff does not identify any act by moving defendants that would constitute "conspiring" with any other defendant.  Plaintiff has not identified any manner in which the defendants conspired to commit illegal acts.  The receipt of litigation funding which plaintiff asserts he was unaware of is insufficient to maintain a claim that the defendants conspired together to commit illegal acts. Count II of plaintiff's complaint should be dismissed with prejudice.

### B.   Plaintiff has not stated a claim against moving defendants for securities fraud

The Securities Exchange Act of 1934 Section 10(b) prohibits the "use or employ, in connection with the purchase or sale of any security, . . .[of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe . . . ."  15 U.S.C. § 78j(b).  Rule 10b-5, promulgated under section 10(b), makes it unlawful for any person "to make any

untrue statement of a material fact or to omit to state a material fact necessary to make the statements made in the light of the circumstances under which they were made, not misleading . . . in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5(b).

To state a claim under section 10(b) and Rule 10b-5, a plaintiff must allege: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or the sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157, 128 S. Ct. 761, 169 L. Ed. 2d 627 (2008); *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005).

Scienter is "a mental state embracing intent to deceive, manipulate or defraud." *See Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 319, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007). To adequately plead scienter under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. Section 78u-4(b)(2); *see also Zucco Partners, LLC v. Digimarc Corp*., 552 F.3d 981, 991 (9th Cir. 2009).

In this case, plaintiff has not alleged facts sufficient to support a claim that moving defendants committed securities fraud under Section 10(b) of the

Securities Exchange Act of 1934.  First, plaintiff has failed to plead this claim with sufficient particularity so as to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the PSLRA.  Plaintiff has also not met the requirements necessary to establish a claim of securities fraud under Section 10(b) of the Securities Exchange Act of 1934.

Fundamentally, plaintiff cannot establish securities fraud as he asserts the agreements were "secret litigation funding agreements."  Exhibit "A" at ¶ 230. Plaintiff explicitly asserts he did not know of and did not enter into these agreements.  Plaintiff's claim is that he did not purchase a security to pay for expert fees.  While these allegations may support a claim relating to the validity of the agreements, they do not suggest that plaintiff was provided with any false information by moving defendants which caused him to purchase a security. Plaintiff did not rely upon any statement or omission by moving defendants in purchasing a security.  Count III of plaintiff's complaint should be dismissed with prejudice.

### C.     Plaintiff has not stated a claim for fraudulent inducement

To make out a claim for fraudulent inducement, plaintiff must demonstrate that there was "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5)

justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Paramount Fin. Commc'ns, Inc. v. Broadridge Inv. Commc'ns Sols., Inc.*, No. CV 15-405, 2023 WL 4755109, at *13 (E.D. Pa. July 26, 2023), *reconsideration denied sub nom. Paramount Fin. Commc'ns, Inc. v. Broadridge Inv. Commc'n Sols., Inc*., No. CV 15-405, 2023 WL 5635772 (E.D. Pa. 2023) *citing to Eigen v. Textron Lycoming Reciprocating Engine Div.*, 874 A.2d 1179, 1185 (Pa. Super. 2005). "A plaintiff bringing a fraudulent inducement claim typically must show deception by the defendant, and must prove all six elements of fraudulent inducement by clear and convincing evidence." *Id. citing to SodexoMAGIC, LLC v. Drexel Univ*., 24 F.4th 183, 205, 217 (3d Cir. 2022). "A broken promise is not the same as a fraudulent inducement claim; a plaintiff must demonstrate that the defendant never intended to perform the contract." *Id. citing to Ohama v. Markowitz*, 434 F. Supp. 3d 303, 317–18 (E.D. Pa. 2020).

Plaintiff claims moving defendants "fraudulently induced" plaintiff to settle his claims by withholding information from him and informing opposing counsel the matter had settled before plaintiff agreed to settle the matter. However, plaintiff does not assert that he would not have accepted the settlement but for the alleged omissions and misrepresentations, nor does plaintiff alleged he would have received an award that exceeded the settlement amount.

Indeed, plaintiff will not be able to establish he could have achieved a greater settlement due to the courts' unwillingness to engage in speculation regarding settlements. Plaintiff's assertion of fraudulent inducement is necessary in order for plaintiff to circumvent the bar to legal malpractice cases arising after a settlement. Pennsylvania courts, and those applying Pennsylvania law, have justifiably avoided second-guessing settlements in all contexts, not just the legal malpractice context. "Settlement of matters in dispute are favored by the law and must, in the absence of fraud and mistake, be sustained. Otherwise any settlement agreement will serve no useful purpose." *Greentree Cinemas, Inc. v. Hakim*, 432 A.2d 1039, 1041 (Pa. Super. 1981).

> It is a well settled doctrine that settlement agreements are a highly favored judicial tool... [C]ourts are loathe to second guess or undermine the original intention of the parties to a settlement agreement. If it were the role of courts to re-evaluate settlement agreements, the judicial policies favoring settlements would be useless....[I]f all of the material terms of the bargain are agreed upon, the court will enforce the settlement.

*In re Estate of Misko*, 2002 WL 372943, at *3 (C.C.P. Phila. 2002) (citations and quotations omitted). *See also, Ogle v. Columbia Gas Transmission*, LLC, 2014 WL 3895500, at *3 (S.D. Ohio 2014) ("The parties ultimately choose the terms on which they will settle...it is not the Court's job to second-guess that decision...."); *Martinez v. Hilton Hotels Corp*., 2013 WL 4427917, at *3 (S.D.N.Y. 2013)

("[T]he Court finds [the amounts paid to parties and counsel] justifiable and the result of arm's length negotiations that the Court will not second-guess.").

In 1991, the Supreme Court of Pennsylvania recognized the important public policy of precluding clients from settling a case and then immediately turning around and suing their lawyers for legal malpractice.  *Muhammad v. Strassburger, McKenna, Messer, Shilobod and Gutnick*, 526 Pa. 541, 587 A.2d 1346 (Pa. 1991), *rehearing denied*, 528 Pa. 345, 598 A.2d 27 (Pa. 1991), *cert denied*  112 S.Ct. 196, (1991).  In *Muhammad*, the Court held: "[W]e foreclose the ability of dissatisfied litigants to agree to a settlement and then file suit against their attorneys in the hope that they will recover additional moneys."  The Court continued: "Simply stated, we will not permit a suit to be filed by a dissatisfied plaintiff against his attorney following a settlement to which that plaintiff agreed, unless that plaintiff can show he was fraudulently induced to settle the original action."  *Muhammad*, 587 A.2d at 1351.

In the legal malpractice context, even before Muhammad, Pennsylvania Courts refused to permit legal malpractice cases which were based on speculation regarding settlement.  *McCartney v. Dunn & Conner, Inc*., 386 Pa. Super. 563, 573, 563 A.2d 525, 530 (1989)("In any event, this Court has not allowed legal malpractice actions based upon speculations regarding settlement negotiations."),

*citing to Mariscotti v. Tinari*, 335 Pa. Super. 599, 485 A.2d 56 (1984).  In

*Mariscotti* the court wrote:

> Her only contention is that she would have been in a better bargaining
> position if she had known the value of his stock. With this knowledge,
> she suggests, she may have been able to achieve a better settlement.
> Her claim, it seems obvious, is based on pure speculation. Whether
> she could have obtained a better settlement is anyone's guess. How
> much better, of course, is even more speculative. These issues cannot
> properly be left to the surmise of a jury. Because these issues are
> entirely speculative, they defeat any cause of action for malpractice of
> the attorney negotiating the settlement.

*Mariscotti v. Tinari*, 335 Pa. Super. 599, 602, 485 A.2d 56, 58 (1984).

Here, plaintiff makes two generalized claims: 1) that he did not know of the

existence of the litigation funding agreements, and 2) that he could have achieved a

greater settlement.  The second allegation is clearly barred by the *Muhammad*

doctrine and the cases which proceeded it as it is second guessing the amount of

the settlement.  The first allegation cannot support a claim for fraudulent

inducement as plaintiff does not assert that he would not have entered into the

settlement if he had known about the agreements.

### D.   Plaintiff has not stated a claim for negligence

Plaintiff's claim for negligence asserts alleged violations of the Pennsylvania

Rules of Professional Conduct.  Exhibit "A" at ¶ 247(a).  Plaintiff also asserts

moving defendants failed to obtain a "reasonable settlement."  Exhibit "A" at ¶

247(b).  Plaintiff also asserts various alleged failures of moving defendants to

communicate specific issues regarding the settlement negotiations with plaintiff. Exhibit "A" at ¶ 247(c), (d), (o)-(v).

As set forth above, negligence claims against attorneys based upon speculation regarding a settlement are not permitted in Pennsylvania. Our Supreme Court recently upheld *Muhammad*, and noted that other than fraud, the only other recognized exception to the general rule in *Muhammad* is where there is a failure to correctly advise a client regarding the applicable law pertaining to a settlement. *Khalil v. Williams*, 278 A.3d 859, 866 (Pa. 2022). The continuing importance and vitality of *Muhammad* has been repeatedly confirmed by other decisions. *Piluso v. Cohen*, 2000 Pa. Super. 335, 764 A.2d 549 (Pa. Super. 2000) *appeal denied* 568 Pa. 663, 793 A2d 909; *Spirer v. Freeland & Kronz*, __Pa. Super. , 643 A.2d 673, 676 (Pa. Super. 1994)(Former client could not maintain legal malpractice action against his lawyer based on dissatisfaction with marital property settlement absent fraud by the lawyer to induce client to accept settlement even though settlement was achieved based on incomplete information due to failure of attorney to adequately investigate and perform discovery); *Banks v. Jerome Taylor & Associates*, 700 A.2d 1329, 1332 (Pa. Super. 1997); *Martos v. Concilio*, 427 Pa. Super. 612, 629 A.2d 1037 (Pa. Super. 1993) (in the absence of fraud, client who was displeased with results of settlement agreement could not sue his attorney for malpractice).

Our courts have recognized three exceptions to the bar to legal malpractice actions after settlement created by *Muhammad*. To overcome the *Muhammad* bar, a plaintiff must be able to prove the defendants 1) fraudulently induced him into signing the Compromise and Release Agreement; 2) failed to explain the effect of that settlement; or 3) negotiated a settlement that was somehow legally deficient. *Silvagni v. Shorr*, 2015 PA Super 62, 113 A.3d 810, 816 (Pa. Super. 2015) ("Unless Silvagni had specifically pled, and could prove, Defendants fraudulently induced him into signing the Compromise and Release Agreement, or he could prove that Defendants failed to explain the effect of that settlement, or that the settlement was somehow legally deficient, Silvagni is barred from maintaining an action in negligence against Defendants."). Likewise, in *Banks* the court noted:

> In cases wherein a dissatisfied litigant merely wishes to second guess his or her decision to settle due to speculation that he or she may have been able to secure a larger amount of money, i.e "get a better deal" the Muhammad rule applies so as to bar that litigant from suing his counsel for negligence. If, however, a settlement agreement is legally deficient or if an attorney fails to explain the effect of a legal document, the client may seek redress from counsel by filing a malpractice action sounding in negligence.

*Banks v. Jerome Taylor & Assocs.*, 700 A.2d 1329, 1332 (Pa. Super. 1997).

To the extent plaintiff's claim is that he could have achieved a better settlement, Count V of plaintiff's complaint must be dismissed. As set forth at greater length below, plaintiff cannot maintain a claim based upon alleged violations of the Rules of Professional Conduct. To the extent Count V is based

upon alleged violations of the Rules of Professional Conduct, Count V must be dismissed.  Plaintiff asserts that he entered into the release due to fraudulent misrepresentations, but has not stated how these alleged misrepresentations caused him to sign the settlement, or that he could have achieved a better outcome but for the alleged misrepresentations.

### E.      Plaintiff has not stated a claim for breach of fiduciary duty

The seventh count of plaintiff's complaint purports to assert a claim for breach of fiduciary duty.  The assertions in this count are largely a cut-and-paste of the negligence claims made in the sixth count of the complaint.  Compare Exhibit "A" at ¶¶ 247 and 253.  Although there are generalized allegations that moving defendants acted in a self-interested manner, there is no basis for an assertions that moving defendants acted in a self-interested manner in arranging for litigation funding.

Breach of fiduciary duty is a disloyalty claim and is not an alternative to a professional negligence claim.  *Composition Roofers Local 30/30B v. Katz*, 398 Pa. Super. 564, 573 (Pa. Super. 1990).  Attorneys owe a fiduciary duty to their clients, and attorneys are bound, at law, to perform their fiduciary duties properly. *Maritrans GP, Inc. v. Pepper, Hamilton & Scheetz*, 529 Pa. 241, 253 (1992).  It is the duty of the attorney to "exercise and maintain the utmost good faith, integrity, fairness and undivided loyalty" to his or her client.  *Composition Roofers Local*,

*supra*.  In order to succeed against an attorney in a breach of fiduciary duty claim,

the plaintiff must show that the attorney breached his duty of honesty, fidelity and

confidentiality.

To establish a breach of fiduciary duty, the plaintiff must prove: (1) the

defendants negligently or intentionally failed to act in good faith and solely for

their benefit; (2) he suffered injury; and (3) the defendants' failure to act solely for

his benefit was a real factor in bringing about his injury.  *Bansley v. Appleton*, No.

809 MDA 2014, 2015 WL 7259000, at *6 (Pa. Super. 2015) (*quoting McDermott*

*v. Party City Corp.*, 11 F. Supp. 2d 612, 626 n.18 (E.D. Pa. 1998)).

Professional negligence does not give rise to a claim for breach of fiduciary

duty.  *Edwards v. Thorpe*, 876 F.Supp. 693 (E.D. Pa. 1995).  "Negligence in a

fiduciary relationship implicates the duty of care, not the duty of loyalty."  *Id.* at

694; *see also,  Wolf v. Fried*, 473 Pa. 26, 373 A.2d 734, 735 (1977).  "A breach of

fiduciary duty claim must involve disloyalty by the lawyer toward the client in a

way which harms the client."  *Kinavey v. D'Alessandro*, No. GD11-012624, 2012

Pa. Dist. & Cnty. Dec. LEXIS 3, at *3 (C.P. 2012); *Pitt v. Goldstein*, 2009 Phila.

Ct. Com. Pl. LEXIS 124 at *10 (describing damages as "an essential element to a

breach of fiduciary duty claim"); *Cambridge Walnut Park, LLC v. Mun. Capital*

*Appreciation Partners I, LP*, 2010 Phila. Ct. Com. Pl. LEXIS 374 at *15

(dismissing breach of fiduciary duty claim due to plaintiff's failure to proffer

evidence of harm); *Lamm v. Lenfest*, No. 02232 COMMERCE PROGRAM, 2011 Phila. Ct. Com. Pl. LEXIS 206, at *52 n.62 (C.P. Jan. 22, 2011).  A breach of fiduciary duty claim cannot be stated merely by asserting a defendant acted in a negligent manner.  *Nkansah v. Kleinbard LLC*, No. CV 19-4472, 2020 WL 920269, at *6 (E.D. Pa. Feb. 26, 2020) ("[Plaintiff's] allegations support no more than an inference that the defendants breached their duty of care, which does not make out a breach of fiduciary duty claim against an attorney.").

Plaintiff did not allege facts to establish disloyalty by moving defendants. Moving defendants did not act contrary to the client's professional interest, such as representing a competitor, divulging confidential information, misuse of funds, or usurping a partnership opportunity.  Plaintiff did not allege facts to establish moving defendants breached a fiduciary duty.  Plaintiff did not allege facts to establish actual loss and a justiciable claim.  Plaintiff did not allege facts to establish he experienced actual damages attributable to a breach of fiduciary duty. The allegations of the complaint are legally insufficient to establish a cause of action for breach of fiduciary duty.

### F.    Plaintiff did not state a claim for breach of the UTPCPL

The seventh count of plaintiff's complaint purports to state a claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL). It is black letter law in Pennsylvania that attorneys' conduct in representing clients

does not fall under the UTPCPL.  *Beyers v. Richmond*, 594 Pa. 654, 657, 937 A.2d 1082, 1084 (2007).  Plaintiff cannot maintain a claim against moving defendants arising out of the UTPCPL due to conduct engaged in during representation.

### G.   Plaintiff has not stated a claim for civil conspiracy

Plaintiff's claim for civil conspiracy is based entirely on the litigation funding agreements.  Pennsylvania courts consistently require "that proof of conspiracy must be made by full, clear and satisfactory evidence."  *Fife v. Great Atlantic & Pacific Tea Co.*, 356 Pa. 265, 52 A.2d 24, 37 (Pa. 1947).   A civil conspiracy claim may proceed only when there is a cause of action for an underlying act.  *Nix v. Temple Univ.*, 408 Pa. Super. 369, 596 A.2d 1132, 1137 (Pa. Super. Ct. 1991).  "Since liability for civil conspiracy depends on performance of some underlying tortious act, the conspiracy is not independently actionable; rather, it is a means of establishing vicarious liability for the underlying tort."  *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 407 (3d Cir. 2000) (*citing Halberstam v. Welch*, 705 F.2d 472, 479, 227 U.S. App. D.C. 167 (D.C. Cir. 1983)).  Parallel conduct or bald assertions thereof are insufficient to properly plead civil conspiracy.  *Petula v. Mellody,* 138 Pa. Commw. 411, 419, 588 A.2d 103, 107 (1991).  Rather, plaintiff must set forth facts supporting the existence of a conspiracy, such as meetings, conferences, telephone calls or written statements.  *Id*. at 419, 588 A.2d at 107.

Proof of agreement and malicious intent are essential to stating a claim for

conspiracy, and the fact that two or more people are acting to do something at the same time is not by itself an actionable conspiracy.  *Kist v. Fatula*, No. 3:2006-67, 2007 U.S. Dist. LEXIS 60615, at *26 (W.D. Pa. Aug. 17, 2007) *citing to*, *Burnside*, *supra*.  Proof of malice is an essential part of a cause of action for conspiracy. *Thompson Coal Co. v. Pike Coal Co*., 488 Pa. 198 at 211, (1979).  An action will lie only where the sole purpose of the conspiracy is to cause harm to the party who claims to be injured. *Id*. ("Proof of malice, i.e., an intent to injure, is essential in proof of conspiracy... There are no facts of record which indicate that [appellee] acted solely to injury appellants").

In interpreting *Thompson Coal*, courts have construed the malice element narrowly as requiring proof that the sole purpose of the conspiracy is to cause harm to the party who has been injured.  Malice can only be found "when the sole purpose of the conspiracy is to cause harm to the party who has been injured." *Jeter v. Brown & Williamson Tobacco Corp.*, 294 F. Supp. 2d 681, 688 (W.D. Pa. 2003), (*emphasis added, citing to, Spitzer v. Abdelhak*, CIVIL ACTION NO. 98-6475, 1999 U.S. Dist. LEXIS 19110, at *31 (E.D. Pa. Dec. 15, 1999); *see also, Guar. Towers, LLC v. Cellco P'ship*, Civ. A. No. 07-554, 2007 U.S. Dist. LEXIS 65819, 2007 WL 2617651, at *6 (M.D. Pa. Sept. 6, 2007) (civil conspiracy claim dismissed where plaintiff alleged both defendants acted to obtain more revenue and thus did not have the sole intent to injure the plaintiff); *WM High Yield Fund v.*

*O'Hanlon*, Civ. A. No. 04-3423, 2005 U.S. Dist. LEXIS 33569, 2005 WL 1017811,
at *14 (E.D. Pa. April 29, 2005) (civil conspiracy claim fails when the plaintiffs
acknowledged the defendants' intent was to raise new capital to fund growth of a
nonparty corporation, thereby negating malice solely to injure plaintiffs); *Sim Kar
Lighting Fixture Co. v. Genlyte, Inc*., 906 F. Supp. 967, 977 (D. N.J. 1995).

Here the allegation that moving defendants obtained litigation funding to
pay for experts is insufficient to state a claim for civil conspiracy. The claim fails
both because plaintiff alleges defendants acted to enrich themselves, but also
because the purpose of the loans was to pay for experts in order to pursue
plaintiff's claims. The sole purpose of the litigation funding agreements was not to
harm plaintiff. Plaintiff cannot establish the necessary malice element in order to
state a claim for civil conspiracy.

### H.    Plaintiff has not stated a basis for a declaratory judgment

Plaintiff seeks declaratory judgment that regarding his responsibility to pay
back the litigation funding. Declaratory judgment is inappropriate solely to
adjudicate past conduct. Nor is declaratory judgment meant simply to proclaim that
one party is liable to another." *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir.
2006). Declaratory judgment is not an appropriate vehicle for the court to
determine whether plaintiff is liable to co-defendants for re-payment of the
litigation funding loans.

## I.     Motion to strike scandalous and impertinent language

Rule 12(f) of the Federal Rules of Civil Procedure provides that "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *See* Fed. R. Civ. P. 12(f).  To demonstrate that content is "impertinent," the moving party must show that the content does not pertain and is not necessary to the issues raised in the complaint. *Donnelly v. Commonwealth Financial Sys.*, Civ. No. 3:07-CV-1881, 2008 WL 762085, at *3 (M.D. Pa. 2008) (citations omitted).  A moving party may establish that content is "scandalous" where the content "improperly casts a derogatory light on someone, most typically on a party to the action." *Lee v. Eddystone Fire & Ambulance*, No. 19-3295, 2019 WL 6038535, at *2 (E.D. Pa. 2019) (quotation omitted).

Plaintiff's complaint includes a number of paragraphs relating to a company formerly owned by Mr. Goggin and litigation related to that company.  Exhibit "A" at ¶¶ 196-200.  These paragraphs are unrelated to moving defendants' representation of plaintiff and are impertinent and scandalous.  Paragraphs 196-200 should be struck for plaintiff's complaint.

Likewise, plaintiff's references to the Rules of Professional Conduct should be stricken as scandalous and impertinent.  Plaintiffs' complaint includes allegations that moving defendants violated certain Rules of Professional Conduct. Exhibit "A" at ¶¶ 247(a), 253(a).  However, in Pennsylvania, a violation of a Rule

of Professional Conduct does not give rise to a claim for legal malpractice.

*Maritrans GP, Inc. v. Pepper Hamilton & Scheetz*, 602 A.2d 1277, 1284 (Pa.

1992) (holding that a lawyer's conduct is not "actionable" simply because it "may

violate the rules of ethics"); *see also* the "scope" note to the Rules of Professional

Conduct (providing that "[v]iolation of a Rule should not give rise to a cause of

action nor should it create any presumption that a legal duty has been breached";

and that the Rules "are not designed to be a basis for civil liability").  Thus,

allegations that an attorney violated a Rule of Professional Conduct are immaterial

and should not be included as an alleged basis for a claim.  Such allegations should

be stricken as scandalous and impertinent pursuant to Rule 12(f).

## V.     <u>Conclusion</u>

For the reasons stated herein, defendants Robert S. Goggin, III, Esquire, Goggin & Duckworth, P.C., Forceno Goggin & Keller, P.C., Keller & Goggin, P.C., respectfully requests this Honorable Court grant their motion to dismiss plaintiff's complaint.

**MARSHALL DENNEHEY, P.C.**

BY:  _____
JOSH J.T. BYRNE, ESQUIRE
Attorney ID No.: 85474
2000 Market Street, Suite 2300
Philadelphia, PA 19103
(215) 575-2600
Email: jtbyrne@mdwcg.com
*Attorney for defendants,*
*Robert S. Goggin, III, Esquire,*
*Goggin & Duckworth, P.C.,*
*Forceno Goggin & Keller, P.C.,*
*Keller & Goggin, P.C.*

Date: <u>February 8, 2024</u>

LEGAL/159253871.v1

33